IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| JASON DUNLAP | : | No. 17-305 |

## MEMORANDUM

PRATTER, J.                                                                                         MAY 15, 2020

### INTRODUCTION

Jason Dunlap awaits sentencing for selling heroin and fentanyl to a friend who died after using the drugs Mr. Dunlap sold to him. Mr. Dunlap is detained in the Federal Detention Center, a block from the Philadelphia-based federal courthouse. Like a number of his fellow FDC inmates, Mr. Dunlap seeks release from detention in light of the COVID-19 pandemic.

There are undeniably serious challenges and universal risks attendant to COVID-19 for people working or residing at the FDC as well as in the community, nation, and world at large. Even so, the Court is constrained by law, facts and legal principles. Thus, the Court concludes that Mr. Dunlap does not meet the statutory requirements of 18 U.S.C. § 3143(a)(2)(A), nor does he present any unique circumstances in the face of COVID-19 that could justify seeking an appropriate or even a unique or novel exception. Accordingly, Mr. Dunlap's motion for pre-sentencing release is denied.

### BACKGROUND

#### I.   The Defendant

Approximately three years ago Mr. Dunlap sought out his regular heroin supplier and bought $900 worth of heroin. He promptly sold $40 worth of that heroin to his friend Jeremy

1

Alterio. Mr. Alterio, then 30 years old, was found dead the next day. The cause of his death was determined to be a lethal amount of heroin and fentanyl. Another customer of Mr. Dunlap's to whom he had sold drugs from the same $900 cache suffered a serious, but fortunately nonfatal, overdose. At the time of these transactions Mr. Dunlap himself was a heroin addict and frequent re-seller of drugs he acquired from the same distributor and from others. At least one of Mr. Dunlap's multi-bundle purchase transactions at the time was observed by law enforcement officers.

About a year after these events transpired a federal grand jury indicted Mr. Dunlap, charging him with violations of 21 U.S.C. § 841(a)(1), (b)(1)(C), one count for his distribution of heroin and fentanyl resulting in Mr. Alterio's death, another count of heroin distribution, and seven counts of possession of heroin with intent to distribute. Mr. Dunlap was then arrested. With the assistance of counsel, he stipulated to being detained and has been held at the FDC since August 8, 2017. Six months after his arrest Mr. Dunlap entered into a co-operation guilty plea agreement with the Government and pled guilty to the crimes charged before this Court. By his agreement Mr. Dunlap has undertaken to provide truthful testimony in the expected trials of his heroin supplier and others in the alleged distribution conspiracy at issue. Mr. Dunlap's sentencing awaits that testimony, and those trials have recently been rescheduled due to jury trial scheduling issues caused by the COVID-19 pandemic issues and the grave public health and logistical concerns resulting from them.

Of no small import, Mr. Dunlap was on court supervision at the time he committed the drug distribution crimes described above, and he had two previous drug-related convictions before the instant offenses. At this time Mr. Dunlap faces a mandatory minimum imprisonment term of 20 years and a likely Guideline range of between 235 and 293 months in prison. Even assuming

circumstances at the time of his sentencing lead the Government to file a motion for a downward departure based upon substantial assistance pursuant to Guideline § 5K1.1 and 18 U.S.C. § 3553(e), Mr. Dunlap reasonably should understand that he realistically faces a very substantial period of incarceration.

Mr. Dunlap is approximately 40 years old and in reportedly reasonably good health without any pre-existing medical or physical condition among those identified in appropriate publicly available sources that categorizes certain individuals as more vulnerable or susceptible to serious adverse effects or outcomes from COVID-19. In other words, there is no basis for the Court to believe Mr. Dunlap is in other than good health. Available information suggests—and is not contradicted—that Mr. Dunlap has been a compliant inmate at the FDC during his detention. He previously has been gainfully employed as a cook and chef. He has family members and friends in Pennsylvania not far from this Philadelphia region and proposes a conditional release to be with his parents under house arrest. Mr. Dunlap admits to having suffered from and with deep-rooted drug addiction.

Mr. Dunlap's motion for pre-sentence release[1] is primarily premised on the alarming nature of COVID-19 and the risk as his counsel describes it within the FDC, and Mr. Dunlap seeks release until that "risk . . . has been eliminated." The Government opposes the motion. Through counsel Mr. Dunlap has waived any hearing or oral argument on his motion.

## II. COVID-19 and the Federal Detention Center

There is no doubt and no dispute that COVID-19 is a disease that is highly infectious, potentially fatal, and the cause of extraordinary, indeed unprecedented restrictions for everyone

---

[1] The papers are titled Defendant's Motion for Pretrial Release (Doc. No. 48) and Defendant's Supplemental Reply in Support of His Motion for Pretrial Release. The Court, however, notes that Mr. Dunlap's status is that he has pled guilty and, hence, has been convicted of the crimes for which he has been indicted. Therefore, he seeks *pre-sentence* release, not pre-trial release.

3

everywhere. The risks certainly appear to rise in direct relation to the number of person-to-person close proximity interactions and certain pre-existing medical conditions. People over the age of 60 are very likely more vulnerable than younger people. A wealth of publications about COVID-19, its characteristics and concepts for combatting it, medical and otherwise, have been circulated for at least two months and cited by lawyers and litigants in numerous cases, including by Mr. Dunlap's counsel. In the last seven weeks, federal and state courts all around the country have issued literally hundreds of orders and opinions to address and resolve motions from people seeking relief from detention or other restrictions because of COVID-19. A number of those motions involve people detained in the Federal Detention Center in Philadelphia which is operated by the Bureau of Prisons. Because these publications and case decisions are multiplying on a daily basis they will not be incorporated or separately cited here except to describe the Court's understanding of the specific conditions extant at the FDC where Mr. Dunlap is detained as of the date of this decision.

The Bureau of Prisons in general and the FDC specifically follows a well-documented Action Plan. The Government's Response to Mr. Dunlap's motion describes that Plan at length, including its current applications in the face of COVID-19. Mr. Dunlap does not challenge the Government's description, only the certainty of its ultimate success or protection for Mr. Dunlap. The Court will not repeat here the BOP protocols, having recently done so in its ruling in *United States v. Nikparvar-Fard*, No. 18-101-1 (E.D. Pa. Apr. 20, 2020). The same protocols are outlined at length in a host of other decisions issued in this district. *See, e.g.*, *United States v. Pizzo,* No. 19-297 (May 11, 2020); *United States v. Xue*, No. 18-122, 2020 WL 2307339, at *2 n.4 (E.D. Pa. May 8, 2020); *United States v. Stevens*, No. 19-350-02, 2020 WL 1888968, at *2 (E.D. Pa. Apr.

4

16, 2020). *See also COVID-19 Cases*, BUREAU OF PRISONS, https://www.bop.gov/coronovirus/ (updated May 7, 2020).

However, subsequent to the date Mr. Dunlap's motion was first filed, the Bureau of Prisons has reported to the Court that three of its staff members, the first on April 30, 2020, the second on May 1 and the third since then, have tested positive for COVID-19.[2] According to the Government,[3] one of these employees has not been in the FDC since April 12 and has recovered from COVID-19. The second staff member "had limited inmate contact." And a third staff member tested positive, "is recuperating and is no longer attending work."

As of the date of this Memorandum, to the Court's knowledge no inmate at the FDC has been reported as having tested positive for COVID-19 or has presented suspected symptoms for COVID-19.

## DISCUSSION

Mr. Dunlap's motion must, in the first and last instance, be measured against 18 U.S.C. § 3143, specifically § 3143(a)(2) which provides:

> The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142[4] and is awaiting imposition or execution of sentence be detained unless—
>
> (A) (i)the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or (ii) an attorney

---

[2] The Government and Mr. Dunlap agree that the FDC does not conduct testing of detainees.

[3] The Government provided a letter dated May 7, 2020 in response to the Court's request in this case for updated information or argument from the parties. A copy of that letter was supplied to Mr. Dunlap's counsel. This letter is factually consistent with a similar status report of the same time period provided to the Criminal Business Committee of this District. This is the same information reported to the chair of the Court's Criminal Business Committee on May 11, 2020, a copy of which is attached as Exhibit A to this Memorandum.

[4] Because Mr. Dunlap pled guilty to distribution of heroin resulting in death, a criminal conviction punishable by up to life in prison, his conviction is subject to § 3142(F)(1)(B), thus triggering § 3143(a)(2).

> for the Government has recommended that no sentence of imprisonment be imposed on the person; and
>
> (B)the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

Here, there is no likelihood of either an acquittal, a new trial or a recommendation of a sentence of no prison time. Under the clear language of § 3143(a)(2)(A) this ends the permissible inquiry without addressing what would be the additional necessity for Mr. Dunlap to present clear and convincing evidence both that (1) he is not likely to flee or (2) pose a danger to the community.[5]

Presumably, Mr. Dunlap's effort against application of § 3143(a)(2) is only that COVID-19 risks have not been "eliminated" at the FDC. The Court declines to entertain such an absolute standard, especially for a healthy 40-year-old individual confined in a facility that is following the published protocols that, thus far, have been appropriate enough that no inmates to date have presented the symptoms of a COVID-19 sufferer. In so ruling the Court is mindful of the observation of a panel of the Third Circuit Court of Appeals in *United States v. Roeder*, No. 20-1682, __ F. App'x __, 2020 WL 1545872 (3d Cir. Apr. 1, 2020), that "the existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence" to be released, *id.* at *3, along with that Court's further admonition in its footnote 16 that "the existence of some health risk to every federal prisoner as

---

[5] The Court notes that even if these were issues for this case—which they are not—this also would be a very high obstacle for Mr. Dunlap who has already demonstrated that, whether explained by his addiction vulnerabilities or not, being on supervision for a drug-related crime did not impede his new criminal conduct. In addition, the likely long sentence of imprisonment he faces, coupled with the COVID-19 caused additional impediments to what would certainly need to be heightened supervision in highly trying times, creates an unacceptable risk of flight. In that regard, the Court also observes that the record contains no evidence that anyone with whom Mr. Dunlap supposedly would reside if he is released has acknowledged a willingness to assume the attendant risks and obligations that arise; nor is there any documented offer of permissible and safe employment for him.

6

the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit," *id.* at*3 n. 16. And further:

> While the COVID-19 pandemic has given rise to exceptional and exigent circumstances that require the prompt attention of the courts, it is imperative that they continue to carefully and impartially imply the proper legal standards that govern each individual's particular request for relief.

*Id.* at *3

Like the court of appeals, of course, this Court also recognizes the enormity of the COVID-19 pandemic. But, the Court also accepts the further guidance of the court of appeals in *United States v. Raia*, No. 20-1033, __ F.3d __, 2020 WL 1647922 (3d Cir. Apr. 2, 2020):

> We do not mean to minimize the risk that COVID-19 poses in the federal prison system, particularly for inmates [with health risks]. But the mere existence of COVID-19 in society and the possibility it might spread to a particular prison alone cannot independently justify . . . release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.

*Id.* at *2. *See also United States v. Nikparvar-Fard*, No. 18-101-1 (E.D. Pa. Apr. 20, 2020).

In light of these considerations, Mr. Dunlap's argument that he personally should be released until the COVID-19 risks "have been eliminated" at the FDC cannot be successful.

## CONCLUSION

For the foregoing reasons, the Court denies Mr. Dunlap's motion for pre-sentencing release. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

7